

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
MAR 04 2014
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. *3:14CR58 DPJ-LRA*

MARK E. RODGERS and
SAMER N'SER

18 U.S.C. §371
15 U.S.C. §77q(a)
15 U.S.C. §77x

**The Grand Jury charges:**

At all times relevant to this indictment:

1.      Valence Broadband, Inc. was a corporation created in September 2005, doing business in

Madison County, Mississippi, and elsewhere, and issued stock in the name of Valence

Broadband, Inc.

2.      Thereafter, in or around February 2008, Valence Broadband, Inc., reincorporated as

Samarion, Inc., doing business in Madison County, Mississippi, and elsewhere, and issued stock

in the name of Samarion, Inc.

3.      The stock were securities, as defined by the United States securities laws, 15 U.S.C. §

77b(a)(1).

4.      The business plan of Valence Broadband, Inc., and later Samarion, Inc., was to produce a

viable monitoring system for installation in nursing homes, and elsewhere, that could predict

when a patient might fall, and prevent abuse and/or neglect by staff, and improve the over-all

care of nursing home patients. The system was commonly known as the "Samarion Solution."

5.      Defendant **MARK E. RODGERS** served as the Chief Executive Officer ("CEO"),

1

Chairman of the Board of Directors, and President of Valence Broadband, Inc., and Samarion, Inc., and was involved in the offer and sale of stock in the aforesaid entities.

6.  Defendant **SAMER N'SER** served as the President, Chief Technology Officer ("CTO"), Secretary, and Treasurer of Valence Broadband, Inc., and Samarion, Inc., and was involved in the offer and sale of stock in the aforesaid entities.

COUNT 1

7.  Beginning at least in or around 2006, and continuing through at least October 2009, in Madison County, Mississippi, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendants, **MARK E. RODGERS and SAMER N'SER** did conspire with each other and others, both known and unknown the grand jury, to commit an offense against the United States, to wit: securities fraud in violation of Sections 77q(a) and 77(x), Title 15, United States Code.

8.  It was part of the conspiracy that Defendants **RODGERS and N'SER** would solicit investments in Valence Broadband, Inc., and in Samarion, Inc., from individuals in Mississippi, Alabama, Louisiana, and elsewhere, through the sale of stock in the aforesaid companies. Defendants **RODGERS' and N'SER's** sales presentation to prospective investors represented that Samarion purportedly created the "Samarion Solution" that could be installed in nursing home that could predict when a nursing home patient was likely to, or about to fall out of bed. Additionally, the "Samarion Solution" was designed to prevent wandering by nursing home patients, to prevent abuse and/or neglect by staff, and to improve the over-all care of nursing home patients.

9.  It was part of the conspiracy that in the offer or sale of a security, Defendants **RODGERS and N'SER,** would knowingly and willfully, by use of the United States Mails or by use of an

2

instrumentality of interstate commerce, employ a device, scheme, or artifice to defraud, and obtain money or property by means of untrue statements of material fact and by omissions of material fact, and to engage in a practice and course of business which would operate as a fraud or deceit upon the purchaser of the security, in violation of Title 15, United States Code, Sections 77q(a) and 77x. In exchange for investors' funds, Defendants **RODGERS and N'SER** provided each investor with stock of Valence Broadband, Inc., and Samarion, Inc., and related documents of the "Samarion Solution" using means of wire communications and mailings via the U.S. Postal Service.

10.    It was part of the conspiracy that Defendants **RODGERS and N'SER** would make numerous false and fraudulent statements in connection with the purchase or sale of the security to entice potential investors to send funds to the company's bank accounts for the purchase of said stock. The false statements and omissions of material facts of Defendants **RODGERS and N'SER** were intended to, and did materially influence individuals in Mississippi, Alabama, and other states to invest and purchase stock in Valence Broadband Inc. and Samarion, Inc. The false and fraudulent statements of Defendants **RODGERS and N'SER** included, but were not limited to, the following statements:

 a.    Defendants **RODGERS and N'SER** had individually invested in excess of $1,000,000.

 b.    Samarion's product, the "Samarion Solution", was fully functional and had no technological hurdles remaining;

 c.    The "Samarion Solution" system had a capacity similar to artificial intelligence;

 d.    Investor money was necessary to move the product to market;

 e.    The company was financially strong;

 f.    The company had outside audits for transparency.

3

11.     At all times relevant to this Indictment, Defendants **RODGERS and N'SER** sold securities, namely stock issued by Valence Broadband, Inc., and Samarion, Inc., representing to the prospective investors that their investment funds would be used solely for the business purposes of Valence Broadband, Inc., and Samarion, Inc.

12.     It was part of the conspiracy that Defendants **RODGERS and N'SER** would take some of these funds for their own use and for uses not consistent with the promises made in obtaining the funds, including but not limited to fraudulently giving themselves raises in salary, and using Samarion funds for personal vacations.

13.     It was part of the conspiracy that Defendant **RODGERS and N'SER** would conceal material facts relating to Defendant **RODGERS**'s employment background from individuals in order to persuade them to purchase shares of stock and to obtain the investors' money, specifically that **RODGERS** had been terminated by more than one prior employer for improperly using that company's funds for his own personal expenses.

14.     In furtherance of the aforesaid conspiracy and the objects thereof, the Defendants **RODGERS and N'SER** committed the following overt acts, among others, in the Northern Division of the Southern District of Mississippi, and elsewhere:

15.     In or about 2006, Defendants **RODGERS and N'SER** omitted from investors that they fraudulently obtained a loan for **N'SER** in the amount of $100,000.00 from Samarion without the authorization of its Board of Directors.

16.     On or about November 28, 2006, Defendant **RODGERS** used corporate funds to purchase a 2007 Land Rover SUV for approximately $91,000 without the approval of the Board of Directors. RODGERS titled this vehicle in his own name.

4

17.     On or about November 29, 2006, Defendants **RODGERS and N'SER** omitted to tell

investors that they fraudulently provided a loan to C First Class Corporation in the amount of

$500,000.00 using investors' funds.  Defendant **RODGERS** was a board member of C First Class

Corporation.  Defendants **RODGERS and N'SER** omitted to tell Samarion's Board of Directors

and investors of Defendant **Rodgers**' personal interest in the corporation.

18.     On or about August 17, 2007, Defendant **RODGERS** omitted to tell investors that he

fraudulently obtained a loan for himself in the amount of $120,000.00 from the funds of Samarion,

Inc.

19.     On November 29, 2007, Defendant **RODGERS** obtained money from investor T.C. in

connection with the purchase or sale of stock issued by Samarion, Inc., having falsely

represented that **RODGERS** had invested a great deal of money in Samarion, that Samarion's

product had a capability similar to artificial intelligence, and that Samarion's system was in use

at a nursing home and was ready to go to market.

20.     On or about June 28, 2008, Defendant **N'SER** told investors at a meeting in Jackson, MS,

that Samarion's system had no significant technological hurdles.

21.     In or about September 2008, at a shareholder meeting in Jackson, Mississippi,

Defendants **RODGERS and N'SER** represented to investors that the "Samarion Solution" was

ready for marketing, when, in fact, it was not.  The "Samarion Solution" was never fully

implemented because of technical difficulties in creating and implementing the system.

22.     On or about and between August 14, 2008, and December 15, 2008, Defendants

**RODGERS and N'SER** obtained money from investor R.L. in connection with the purchase or

sale of stock issued by Samarion, Inc., having falsely represented that each had invested millions

of dollars in Samarion, that **RODGERS** was the largest single investor, that investor money was

necessary to get the Samarion product to market, that Samarion was financially strong, that Samarion had outside audits and no significant debts, that Samarion's system had no significant technological hurdles.

23.     On or about December 11, 2008, Defendant **RODGERS** omitted to tell investors that he fraudulently obtained a bonus for **RODGERS** in the amount of $51,000.35 by submitting a letter that falsely represented the authorization of the Board of Directors. The aforesaid letter instructed the company accounting clerk to issue a check to **RODGERS** when, in fact, the Board of Directors had previously rejected its authorization of the bonus.

24.     In or about and between December 2008 and January 2009, Defendant **RODGERS** attempted a televised demonstration of the "Samarion Solution" at a nursing home in Louisiana. However, as the system was not fully functional, Defendant **RODGERS** used a hidden remote control device to make the product falsely appear functional.

25.     On or about March 14, 2009, Defendant **RODGERS** obtained money from investor C.B.A. in connection with the purchase or sale of stock issued by Samarion, Inc., having falsely represented that Samarion's product was ready to go to market, that the product had a function similar to artificial intelligence, and that **RODGERS** had made a substantial personal investment in Samarion.

26.     On or about April 13, 2009, Defendants **RODGERS and N'SER** conducted a meeting in Huntsville, Alabama, to recruit investors to fund the marketing of the "Samarion Solution", falsely representing to the investors that the product was fully developed and ready for marketing to the public.

27.     On or about April 13, 2009, Defendants **RODGERS and N'SER** obtained money from investor G. P. G. in connection with the purchase or sale of stock issued by Samarion, Inc.,

having falsely represented that that the company was in good standing, that **RODGERS** and N'SER personally invested approximately $1 million into the business, that **RODGERS** was the largest single investor, and that additional investor money was necessary to move the Samarion product to market.

28.     On or about April 13, 2009, Defendants **RODGERS and N'SER** obtained money from investor K. E. H. in connection with the purchase or sale of stock issued by Samarion, Inc., having falsely represented that **RODGERS and N'SER** invested approximately $1 million into Samarion, that **RODGERS** invested the majority of the $1 million, that **RODGERS** was the largest single investor, that Samarion was financially strong, and that investor money was necessary to move Samarion's product to market.

29.     On or about April 13, 2009, Defendants **RODGERS and N'SER** obtained money from investor R. G. S. in connection with the purchase or sale of stock issued by Samarion, Inc., having falsely represented that **RODGERS** was Samarion's largest investor, that Samarion was financially strong, and that investor money was necessary to move Samarion's product to market.

30.     On or about June 8, 2009, Defendant **RODGERS** circulated a Samarion investor update letter which falsely advised shareholders of the end of the test phase of the "Samarion Solution" and movement into the sales phase of the product.

31.     On or about July 29, 2009, Defendant **RODGERS** circulated a Samarion investor update letter which falsely reported that several contracts had been closed for the sale of the "Samarion Solution".

32.     On or about September 4, 2009, Defendant **RODGERS** again obtained money from investor T.C. in connection with the purchase or sale of stock issued by Samarion, Inc., having

falsely represented that **RODGERS** had personally invested a great deal of money in Samarion, that Samarion's product had a capability similar to artificial intelligence, and that Samarion's system was in use at a nursing home and was ready to go to market.

33.     On or about September 10, 2009, Defendant **RODGERS** circulated a Samarion investor update letter falsely suggesting that the "Samarion Solution" was working in the nursing home setting.

All in violation of Section 371, Title 18, United States Code.

## COUNTS 2 – 9

34.     The allegations contained in paragraphs 1- 33 of this Indictment are hereby re-alleged and incorporated herein as if fully set forth in this paragraph.

35.     On or about the dates identified below, in the Northern Division of the Southern District of Mississippi, and elsewhere, Defendants **RODGERS and N'SER**, directly or indirectly, in the offer and sale of a security, namely stock issued by Valence Broadband, Inc., and Samarion, Inc., to an investor residing in the state of the United States set forth below, did knowingly and willfully employ a device, scheme, and artifice to defraud, and to obtain money and property by means of an untrue statement of material fact and omitted to state a material fact that was necessary in order to make a statement that was made, not misleading, in light of the circumstances under which made, and engaged in a course of business which operated as a fraud and deceit upon the purchaser, and did, then and there, in association therewith, used an instrumentality of interstate commerce or use of the mails, by causing investor's funds, in the approximate amount set forth below, to be deposited in (A) Community Bank of Mississippi account number ending –6105 styled Valence Broadband, Inc., or (B) UBS Financial Services, Inc., account number ending -00345 styled Valence Broadband also doing business as Samarion

SM, and collected through an interstate clearing system, each count setting forth a separate offense.

| Count | Date | Investor | State | Amount |
|-------|------|----------|-------|--------|
| 2 | 03/14/2009 | C. B. A. | MS | $  5,000 |
| 3 | 04/13/2009 | G. P. G. | AL | $ 50,000 |
| 4 | 04/13/2009 | K. E. H. | AL | $ 50,000 |
| 5 | 04/13/2009 | R. G. S. | AL | $ 50,000 |
| 6 | 04/13/2009 | T. B. C. | AL | $ 50,000 |
| 7 | 04/13/2009 | C. T. H. | AL | $350,000 |
| 8 | 08/31/2009 | T. S. | MS | $ 15,000 |
| 9 | 09/04/2009 | T. C. | MS | $  5,000 |

All in violation of Sections 77q(a) and 77x, Title 15, United States Code, and Section 2, Title 18, United States Code.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

As a result of committing the offenses as alleged in this Indictment, the defendants shall forfeit to the United States all property involved in or traceable to property involved in the offenses, including but not limited to all proceeds obtained directly or indirectly from the offenses, and all property used to facilitate the offenses. Further, if any property described above, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property, which cannot be divided without difficulty, then it is

9

the intent of the United States to seek a judgment of forfeiture of any other property of the defendants, up to the value of the property described in this notice or any bill of particulars supporting it.

    All pursuant to Section 981(a)(1)(C), Title 18, United States Code and Section 2461(c), Title 28, United States Code.

GREGORY K. DAVIS
United States Attorney

A TRUE BILL:
S/SIGNATURE REDACTED
Foreperson of the Grand Jury

    This indictment was returned in open court by the foreperson or deputy foreperson of the grand jury on this the ___4ᵗʰ___ day of March, 2014.

UNITED STATES MAGISTRATE JUDGE

10